# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE**, | ) | |
| | ) | |
| **v.** | ) | **ID. Nos. 1705002474,** |
| | ) | **1705004722** |
| **ROBERT P. CAULK,** | ) | |
| **Defendant.** | ) | |

Submitted: March 5, 2021
Decided: June 29, 2021

## ORDER DENYING POSTCONVICTION RELIEF
## AND GRANTING COUNSEL'S MOTION TO WITHDRAW

Upon consideration of Defendant Robert P. Caulk's Motions for Postconviction Relief (D.I. 52, 67)[1], the State's response thereto (D.I. 78), his postconviction counsel's Motion to Withdraw (D.I. 66), the affidavits of both trial and appellate counsel (D.I. 73, 75), and the record in this case, it appears to the Court that:

## I.     FACTUAL AND PROCEDURAL BACKGROUND

(1)     On April 19, 2017, Robert Caulk entered a 7-Eleven located at 530 Greenhill Avenue in Wilmington, brought an item to the counter and handed over a card to pay for it. When the card didn't work, Mr. Caulk stepped aside to allow the clerk to serve another customer. When that customer left, Mr. Caulk pulled out a

---

[1]     To avoid confusion, unless otherwise noted, the Court will reference only the docket entries from Case ID No. 1705002474.

knife and told the clerk to give him the money from the register. The clerk handed over the store's money.[2]

(2) On May 4, 2017, Mr. Caulk entered the same 7-Eleven. There, he approached the same clerk—this time from behind—pressed a knife against his back, and again demanded cash from the register.[3]

(3) Wilmington Police reviewed the video footage of the two robberies and developed Mr. Caulk as the primary suspect. Via a photo lineup, the clerk identified Mr. Caulk as the person who robbed the store on April 19, and May 4, 2017. A warrant was then issued for Mr. Caulk's arrest.[4]

(4) On May 8, 2017, Mr. Caulk, again, robbed the same clerk at the same 7-Eleven, this time taking cash, cigarettes, and lottery tickets.[5]

(5) Not long after this third robbery, Wilmington Police spotted Mr. Caulk wearing the same clothing as they had just seen in the 7-Eleven surveillance video. Wilmington Police arrested Mr. Caulk and found a screwdriver, money, a cell phone, and cigarettes on his person.[6]

---

[2] *Caulk v. State*, 2019 WL 1299962, at *1 (Del. Mar. 19, 2019).

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

(6) Wilmington Police then obtained search warrants for Mr. Caulk's home and cellphone. At Mr. Caulk's home, police found a blue, hooded sweatshirt matching the robber's as seen in the surveillance footage of the April 19th and May 4th robberies. The analysis of cell tower data for Mr. Caulk's phone revealed that it was in the area of the 7-Eleven around the time of the May 4th and May 8th robberies.[7]

(7) A Superior Court grand jury indicted Mr. Caulk on six counts of Robbery First Degree, five counts of Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF"), and one count of Aggravated Menacing.[8] Within a week of indictment, Ralph D. Wilkinson, IV, Esquire, was appointed to represent Mr. Caulk and filed pleas of not guilty on his behalf.[9]

(8) In November 2017, the State extended a plea offer to one count of first-degree robbery, one count of second-degree robbery, and one count of third-degree assault with a recommendation of the minimum 25-year Level V term required with the application of the Habitual Criminal Act (11 *Del. C.* § 4214) to the

---

[7] *Id.* at *2.

[8] Indictment, *State v. Robert Caulk*, ID Nos. 1705002474, 1705004722 (Del. Super. Ct. July 10, 2017) (D.I. 2).

[9] Arraignment Waiver Form, *State v. Robert Caulk*, ID Nos. 1705002474, 1705004722 (Del. Super. Ct. July 25, 2017) (D.I. 3).

first-degree robbery count.[10]  Mr. Caulk rejected the plea offer.[11]

(9)   On December 20, 2017, the Court held a scheduling conference at which Mr. Wilkinson advised that Mr. Caulk wished to forego a jury trial and proceed with a bench trial.[12]  The next week, the Court held a hearing to confirm Mr. Caulk's plea rejection and accept his jury trial waiver.  After a thorough colloquy with him, the Court determined that Mr. Caulk understood the details of the plea offer he had rejected and that his jury trial waiver was knowing and voluntary.[13]

(10)   The following week the Court conducted a two-day bench trial.  Before testimony commenced, the State entered a *nolle prosequi* on three of the robbery counts and one count of PDWDCF.[14]

(11)   During its case-in-chief, the State presented testimony of:  (i) Kashmir Singh,  the 7-Eleven clerk involved in all three robberies; (ii) Jennifer Johnstone, a witness to the May 8th robbery; (iii) Wilmington Police Department (WPD) Officer Diana Agosto, who responded to and investigated the April 19th robbery; (iv) WPD Sergeant Michael Gifford, the May 8th arresting officer; (v) WPD Officer Shauntae

---

[10]   Case Review Tr., Nov. 27, 2017, at 4 (D.I. 81).

[11]   *Id*. at 4, 7-13.

[12]   Office Conference Tr., Dec. 20, 2017, at 2 (D.I. 60).

[13]   Jury Trial Waiver Colloquy Tr., Dec. 27, 2017, at 2-17 (D.I. 80).

[14]   Trial Tr., Jan. 3, 2018,  at 4 (D.I. 45).

Hunt, who responded to and investigated the May 4th robbery; (vi) WPD Sergeant Steven Parrott, who responded to and investigated the May 8th robbery; (vii) WPD Officer Thomas Lynch, who responded to and investigated the May 8th robbery; (viii) Corporal William Gearhart of the WPD Forensic Services Unit, who testified that certain prints lifted from the scene of the robbery did not match Mr. Caulk; (ix) WPD Detective Joran Merced, who responded to and investigated the April 19th and May 4th robberies; and (x) Brian Daly, a Department of Justice investigator, who analyzed Mr. Caulk's cell phone data.[15] The State also presented the surveillance videos from all three robberies.[16] Mr. Caulk did not testify during the trial and no defense witnesses were called.[17]

(12) When the State's case concluded, Mr. Wilkinson moved for partial judgment of acquittal on the May 8th robbery count arguing that as, neither Mr. Singh nor Ms. Johnstone testified to actually seeing a weapon during the commission of the crime, the State had not proven that aggravating element required for a verdict of first-degree robbery.[18] The Court denied the motion.[19]

---

[15]  *Id*. at 10, 34, 41, 50, 69, 78, 87, 98, 122, 141.

[16]  *Caulk*, 2019 WL 1299962, at *2.

[17]  Trial Tr., Jan. 5, 2018, at 16-18 (D.I. 46).

[18]  *Id*. at 2-5.

[19]  *Id*. at 5.

(13)   The Court dismissed Mr. Caulk's aggravated menacing charge and one count of PDWDCF as they merged with other counts.[20]  The Court then rendered its verdict, finding Mr. Caulk guilty of one count of Robbery First Degree and one count of PDWDCF for the April 19th incident.[21]  The Court also found Mr. Caulk guilty of one count of Robbery First Degree for each of the May 4th and May 8th robberies. But the Court acquitted Mr. Caulk of each PDWDCF counts tied to those two later incidents.[22]  The Court then ordered a pre-sentence investigation and deferred sentencing until its completion.[23]

(14)   Prior to sentencing, the State moved to declare and sentence Mr. Caulk as a habitual criminal offender.[24]  The Court held a hearing on the State's motion where Mr. Caulk argued that, while his two prior violent felony convictions did occur, he did not have an opportunity for rehabilitation between those convictions. Thus, argued Mr. Caulk, that required element of the habitual offender statute—as he defined it—could not be satisfied.[25]  In granting the State's motion, the Court

---

[20]   *Id*. at 8-9.

[21]   Verdict Tr., Jan. 8, 2018, at 11 (D.I. 42).

[22]   *Id*. at 11-12.

[23]   *Id*. at 13.

[24]   Mots. to Dec. Def.  Habitual Offender, *State v. Robert Caulk*, ID Nos. 1705002474, 1705004722 (Del. Super. Ct. Mar. 22, 2018, June 26, 2018) (D.I. 31, 34).

[25]   Sentencing Tr., July 16, 2018, at 11-12 (D.I. 61).

reviewed Delaware case law on the rehabilitation issue and determined that all that was required for predicate felonies to count in the habitual criminal sentencing calculation is a mere lapse of time between the sentencing for one crime and the commission of the next—that is, there can be no overlap.[26]

(15)   The Court granted the State's motion as to the May 4th and May 8th robbery charges[27] and sentenced Mr. Caulk: (i) for the first count of first-degree robbery (IN17-05-0760)—25 years at Level V to be served under the provisions of 11 *Del. C.* § 4214;    (ii) for the second count of first-degree robbery (IN17-05-1322)—25 years at Level V to be served under the provisions of 11 *Del. C.* § 4214; (iii) for the third count of first-degree robbery (IN17-05-0759)—15 years at Level V, suspended after three years for two and one-half years months of decreasing levels of supervision; and (iv) for PDWDCF (IN17-05-1324)—two years at Level V.[28]

---

[26]   *Id*. at 12-15.

[27]   Order Dec. Def. Habitual Offender, *State v. Robert Caulk*, ID Nos. 1705002474, 1705004722 (Del. Super. Ct. July 16, 2018) (D.I. 37).

[28]   Sentencing Order, *State v. Robert Caulk*, ID Nos. 1705002474, 1705004722 (Del. Super. Ct. July 16, 2018) (D.I. 38).

(16)    Mr. Caulk immediately filed a direct appeal in the Delaware Supreme Court.  His convictions and sentences were affirmed.[29]

(17)    Mr. Caulk then moved, *pro se*, to modify his sentence.  He asks the Court to order his several sentences to run concurrently.[30]

## II.    MR. CAULK'S MOTIONS FOR POSTCONVICTION RELIEF

(18)    Shortly thereafter, Mr. Caulk filed, *pro se*, the present Motion for Postconviction Relief[31] and a Motion for Appointment of Counsel.[32]  The Court granted Mr. Caulk's Motion for Appointment of Counsel[33] and Edward F. Eaton, Esquire, was appointed to represent Mr. Caulk in his postconviction proceeding. Mr. Eaton has filed a Motion to Withdraw as Counsel.[34]  In his motion, Mr. Eaton

---

[29]  *Caulk*, 2019 WL 1299962, at *1. Mr. Caulk was appointed appellate counsel, Santino Ceccotti, Esquire, who filed a non-merit brief and motion to withdraw under Supreme Court Rule 26(c). *Id.* at *2.

[30]  Mot. for Sentence Mod., *State v. Robert Caulk*, ID Nos. 1705002474, 1705004722 (Del. Super. Ct. Aug. 26, 2019) (D.I. 49).  The Court stayed the consideration of this motion until the resolution of Mr. Caulk's postconviction proceedings.  Letter Order, *State v. Robert Caulk*,  ID Nos. 1705002474, 1705004722 (Del. Super. Ct. Oct. 28, 2019) (D.I. 57).

[31]  Def.'s Mot. for Postconviction Relief, *State v. Robert Caulk*, ID Nos. 1705002474, 1705004722 (Del. Super. Ct. Oct. 18, 2019) (D.I. 52).

[32]  Def.'s Mot. for Appt. of Counsel, *State v. Robert Caulk*, ID Nos. 1705002474, 1705004722 (Del. Super. Ct. Oct. 18, 2019) (D.I. 53).

[33]  Order Granting Def.'s Mot. for Appt. of Counsel, *State v. Robert Caulk*, ID Nos. 1705002474, 1705004722 (Del. Super. Ct. Oct. 28, 2019) (D.I. 56).

[34]  PCR Counsel's Mot. to Withdraw, *State v. Robert Caulk*, ID Nos. 1705002474, 1705004722 (Del. Super. Ct. June 16, 2020) (D.I. 66).

reports that, after careful review of Mr. Caulk's case, Mr. Caulk's claims are so lacking in merit that he cannot ethically advocate for them; and further, that he is not aware of any other substantial grounds for relief.[35] Mr. Caulk filed a Supplemental Motion for Postconviction Relief, setting forth new claims and requesting that the Court deny Mr. Eaton's motion to withdraw.[36] Mr. Caulk's trial and appellate counsel have each filed an affidavit addressing Mr. Caulk's postconviction claims.[37] And the State has filed its response opposing Mr. Caulk's postconviction motion.[38]

(19) In his postconviction motion and its supplements, Mr. Caulk raises seven claims of ineffective assistance of counsel—six against trial counsel and one against appellate counsel—and two standalone claims of Court error. Specifically, Mr. Caulk alleges his trial counsel, Mr. Wilkinson, was ineffective as: (i) he failed to investigate Mr. Caulk's history of mental health issues and substance abuse, and present those findings at the sentencing hearing; (ii) he failed to present evidence at

---

[35] *Id.* at 1, 28.

[36] Def.'s Rule 61 Suppl., *State v. Robert Caulk*, ID Nos. 1705002474, 1705004722 (Del. Super. Ct. June 2, 2020) (D.I. 67).

[37] Appellate Counsel Aff., *State v. Robert Caulk*, ID Nos. 1705002474, 1705004722 (Del. Super. Ct. Oct. 30, 2020) (D.I. 73); Trial Counsel Aff., *State v. Robert Caulk*, ID Nos. 1705002474, 1705004722 (Del. Super. Ct. Nov. 30, 2020) (D.I. 75).

[38] State's Opp'n, *State v. Robert Caulk*, ID Nos. 1705002474, 1705004722 (Del. Super. Ct. Jan. 19, 2021) (D.I. 78).

trial based upon conversations with Mr. Caulk, knowing that he suffered from mental health and substance abuse issues; (iii) he permitted Mr. Caulk to waive his right to a jury trial and proceed before a judge who was fully aware of his history;[39] (iv) he failed to conduct a pretrial investigation and adequately prepare for trial; (v) he failed to cross-examine the State's witnesses using the questions provided by Mr. Caulk; and (vi) he failed to file a motion to suppress as Mr. Caulk requested.[40]  Further, Mr. Caulk alleges his appellate counsel, Mr. Ceccotti, was ineffective for moving to withdraw and filing a Rule 26(c) non-merit brief.  This, Mr. Caulk says, forced him to proceed *pro se*, placing him in an impossible position due to his mental health issues, learning disabilities, and lack of legal training.[41]  Lastly, Mr. Caulk contends that the Court should have: (i) conducted a hearing to investigate the conflicts between himself and trial counsel; and (ii) in light of these conflicts, continued the trial to allow for more time for the defense to prepare.[42]

(20)  In accord with this Court's Criminal Rule 61(e)(1), Mr. Caulk was appointed postconviction counsel.[43]  Mr. Eaton has now, pursuant to Rule 61(e)(7),

---

[39]  Def.'s Mot. for Postconviction Relief at 3.

[40]  Def.'s Rule 61 Suppl. at 1-4.

[41]  Def.'s Mot. for Postconviction Relief at 3.

[42]  Def.'s Rule 61 Suppl. at 1-4.

[43]  Order Granting Def.'s Mot. for Appt. of Counsel (D.I. 53).

filed a brief and motion to withdraw.[44]  Mr. Eaton avers that, based upon a careful and complete examination of the record, there are no meritorious grounds for relief.[45]

(21)  Under this Court's Criminal Rule 61(e)(7):

> If counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw. The motion shall explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a response to the motion within 30 days of service of the motion upon the movant.[46]

(22)  Mr. Eaton has conducted a careful review of Mr. Caulk's case and has determined that Mr. Caulk's claims are so lacking in merit that he cannot ethically advocate them.  Mr. Eaton explains further that he is unaware of any other substantial ground for relief.[47]  Mr. Eaton provided Mr. Caulk with a copy of his withdrawal motion and advised Mr. Caulk of his ability under Rule 61(e)(7) to file a response thereto.[48]

---

[44]  PCR Counsel's Mot. to Withdraw (D.I. 66).

[45]  *Id*. at 1, 28.

[46]  Super. Ct. Crim. R. 61(e)(7).

[47]  PCR Counsel's Mot. to Withdraw at 1, 28.

[48]  *Id*. at 28.

## III. RULE 61'S PROCEDURAL REQUIREMENTS

(23) In order to evaluate Mr. Caulk's postconviction claims, and to determine whether his latest counsel's motion to withdraw should be granted, the Court should be satisfied that Mr. Eaton conducted a truly conscientious examination of the record and the law for claims that could arguably support Mr. Caulk's Rule 61 motion. The Court should also conduct its own review of the record to determine whether Mr. Caulk's Rule 61 motion is devoid of any, at least, arguable postconviction claims.[49]

(24) Delaware courts must consider Criminal Rule 61's procedural requirements before addressing any substantive issues.[50] The procedural bars of Rule 61 are "timeliness, repetitiveness, procedural default, and former adjudication."[51] Here, Mr. Caulk's motion was filed less than a year after his judgment of conviction became final.[52] So it's timely. This is Mr. Caulk's first Rule 61 application. So it's not repetitive.

---

[49] *State v. Coston*, 2017 WL 6054944, at *2 (Del. Super. Ct. Dec. 7, 2017).

[50] *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996); *State v. Jones*, 2002 WL 31028584, at *2 (Del. Super. Ct. Sept. 10, 2002).

[51] *State v. Stanford*, 2017 WL 2484588, at *2 (Del. Super. Ct. Jun. 7, 2017).

[52] Def.'s Mot. for Postconviction Relief (D.I. 52); Supreme Court Mandate, *State v. Robert Caulk*, ID Nos. 1705002474, 1705004722 (Del. Super. Ct. Apr. 4, 2019) (D.I. 48).

(25) Rule 61(i)(3) states, too, that "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows . . . [c]ause for relief from the procedural default and . . . [p]rejudice from violation of the movant's rights."[53] Though this bar is inapplicable to allegations of ineffective assistance of counsel that, in all but the rarest of circumstances, couldn't have been raised on direct appeal.[54] So Mr. Caulk's ineffective assistance of counsel claims aren't procedurally barred here. And the Court will address them on their merits.

(26) But Mr. Caulk's standalone claims of trial error—alleging that the Court should have conducted a hearing to investigate the conflicts between himself and trial counsel and continued the trial to allow for more time for the defense to prepare—are procedurally barred by Rule 61(i)(3) because Mr. Caulk never requested such a hearing or continuance. Nor did he raise these issues during his direct appeal.

(27) Mr. Caulk does contend these claimed errors should have been raised on direct appeal, but appellate counsel ignored them and instead filed a non-merit brief and motion to withdraw under Supreme Court Rule 26(c).[55] So the Court will

---

[53] Super. Ct. Crim. R. 61(i)(3).

[54] *State v. Coverdale*, 2018 WL 259775, at *2 (Del. Super. Ct. Jan. 2, 2018).

[55] Def.'s Rule 61 Suppl. at 4.

treat the failure-to-address-the-conflict and failure-to-continue-the-trial issues as ineffective assistance of counsel claims brought against Mr. Caulk's appellate counsel.

(28) In sum then, Mr. Caulk levels six claims of ineffective assistance of counsel at his trial counsel and two claims at his appellate counsel.[56]

## IV. DISCUSSION

### A. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS—TRIAL COUNSEL.

(29) A claim of ineffective assistance of counsel is reviewed under the familiar two-part *Strickland* test.[57] A claimant asserting ineffective assistance of counsel must demonstrate that: (i) his defense counsel's representation fell below an objective standard of reasonableness, and (ii) there is a reasonable probability that, but for counsel's errors, the result of his proceedings would have been different.[58]

(30) For the first prong, deficient performance, the burden is on the claimant to show that counsel's conduct fell below an objective standard of reasonableness, "*i.e.*, that no reasonable lawyer would have conducted the defense as his lawyer

---

[56] These two claims being: (1) withdrawing as counsel during the appeal; and (2) failing to raise Mr. Caulk's two standalone complaints of trial court error during the direct appeal.

[57] *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Neal v. State*, 80 A.3d 935, 946 (Del. 2013).

[58] *Strickland*, 466 U.S. at 688-94; *see also Alston v. State*, 2015 WL 5297709, at *3 (Del. Sept. 4, 2015).

did."[59] There is a strong presumption that counsel's representation was reasonable,[60] and "[i]t is not this Court's function to second-guess reasonable [ ] tactics" engaged by trial counsel.[61] Indeed, an attorneys strategic or tactical choices made after thorough investigation of the relevant law and facts are virtually unchallengeable.[62]

(31) Too, one claiming ineffective assistance "must make specific allegations of how defense counsel's conduct actually prejudiced the proceedings, rather than mere allegations of ineffectiveness."[63] This second prong requires the claimant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[64]

(32) An inmate must prove *both* deficient attorney performance *and* resulting prejudice to succeed in making an ineffective assistance of counsel claim.

---

[59] *Green v. State*, 238 A.3d 160, 174 (Del. 2020) (citing *Burger v. Kemp*, 483 U.S. 776, 791 (1987)).

[60] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[61] *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Ct. Apr. 1, 2002).

[62] *Green*, 238 A.3d at 174.

[63] *Alston*, 2015 WL 5297709, at *3 (citing *Wright*, 671 A.2d at 1356); *Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015) (citing *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996)); *Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003).

[64] *Starling v. State*, 130 A.3d 316, 325 (Del. 2015) (quoting *Strickland*, 466 U.S. at 694).

Failure in the first instance to prove either will doom his claim, and the Court need not address the other.[65]

(33)    There are a few situations that the United States Supreme Court has recognized to be so egregious that an ineffectiveness claimant need not prove the prejudice prong of the traditional *Strickland* test.  In *United States v. Cronic*, the Court set out three "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."[66]  These are: (i) where there was complete denial of counsel at a critical stage of the proceeding;[67] (ii) where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing";[68] and, (iii) where "counsel is called upon to render assistance under circumstances where competent counsel very likely could have not . . ."[69]

(34)    In his fourth, fifth, and sixth claims of ineffective assistance of counsel against Mr. Wilkinson, Mr. Caulk seeks to invoke the *Cronic* standard, claiming that he was denied counsel altogether and counsel entirely failed to subject the

---

[65]    *Strickland*, 466 U.S. at 697; *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant"); *State v. Hamby*, 2005 WL 914462, at *2 (Del. Super. Ct. Mar. 14, 2005).

[66]    *United States v. Cronic*, 466 U.S. 648, 658 (1984).

[67]    *Id*. at 659.

[68]    *Id*.

[69]    *Bell v. Cone*, 535 U.S. 685, 696 (2002).

prosecution's case to meaningful adversarial testing.[70] But before the Court will presume prejudice under *Cronic*, "there must be a complete failure of counsel."[71] And, as set out below, there was nothing even close to a "complete failure of counsel." No, Mr. Caulk's contentions exhibit more of either his complete disagreement with or complete misunderstanding of the professional decisions Mr. Wilkinson made and the professional acts Mr. Wilkinson took—acts taken with, at least, some favorable results—in Mr. Caulk's defense. Thus, Mr. Caulk's claims will all be subject to the traditional *Strickland* analysis.

### 1. Failure to investigate and present mental health and substance abuse evidence at trial and sentencing.

(35) In his first two contentions of ineffective assistance of trial counsel, Mr. Caulk alleges that Mr. Wilkinson failed to investigate and present evidence of Mr. Caulk's mental health and substance abuse history at trial and sentencing.[72] This claim survives neither of the two *Strickland* inquiries.

(36) Mr. Wilkinson did investigate and consider how to utilize Mr. Caulk's mental health and substance abuse history. Specifically, Mr. Wilkinson obtained a psycho-forensic evaluation of Mr. Caulk that included extensive psychological

---

[70] Def.'s Rule 61 Suppl. at 1-4.

[71] *Jackson v. Carroll*, 161 F. App'x. 190, 193, 2005 WL 3477556, at *2 (3d Cir. Dec. 20, 2005); *State v. Jackson*, 2008 WL 5048424, at *18 n.134 (Del. Super. Ct. Nov. 25, 2008).

[72] Def.'s Mot. for Postconviction Relief at 3.

reports from multiple state agencies.[73]  But, according to Mr. Wilkinson, nothing in these records could be used to fashion a legal defense to the charged crimes.[74]  And it was after conducting this investigation and reviewing the available mental health reports that Mr. Wilkinson settled on the appropriate defense strategy in Mr. Caulk's case.[75]  Those decisions won't be second-guessed now.[76]  Mr. Caulk has failed to demonstrate that his trial counsel performed deficiently.

(37)  Moreover, even if Mr. Caulk were able to show deficient performance on this claim, it would still fail for his inability to show resulting prejudice.  This is for two reasons.  *First*, at the sentencing hearing Mr. Wilkinson did present Mr. Caulk's mental health and substance abuse history to the Court.  He argued, in part, that based on that history Mr. Caulk had not had the opportunity for rehabilitation  required to be declared a habitual criminal offender.[77]  The Court rejected that argument.[78]  *Second*, Mr. Caulk was sentenced to the minimum

---

[73]  Trial Counsel Aff. ¶ 1.

[74]  *Id*.

[75]  *See Green*, 238 A.3d at 174 ("Indeed, [i]f an attorney makes a strategic choice after thorough investigation of law and facts relevant to plausible options, that decision is virtually unchallengeable . . ." (quoting *Purnell v. State*, 106 A.3d 337, 342 (Del. 2014) (internal quotation marks omitted))).

[76]  *Drummond*, 2002 WL 524283, at *1.

[77]  Sentencing Tr., July 16, 2018, at 11-12.

[78]  *Id*. at 15-16.

mandatory sentence required for each of his several offenses.[79]  Any further appeal by Mr. Wilkinson to the Court's discretion would not and could not have affected the outcome Mr. Caulk's sentencing—the Court had no discretion to sentence below the statutory minimums.  Because he demonstrates neither deficient performance nor resultant prejudice, Mr. Caulk's first and second ineffective assistance of trial counsel claims fail.

## 2. Allowing Mr. Caulk to Waive Jury Trial.

(38)   Mr. Caulk's next contention of ineffective assistance of trial counsel is a complaint that Mr. Wilkinson allowed him to waive his right to a jury trial and "be tried before a Judge [who was] fully aware of [his] extensive history."[80]  Once again, this claim fails.

(39)   Mr. Caulk has not shown that Mr. Wilkinson's representation here was deficient.  Nor could it be in this circumstance.  The ultimate authority to make certain fundamental decisions regarding his case—which include whether to plead guilty, waive trial by jury, testify, or appeal—lays with the criminal defendant.[81]  This is because the consequences of these decisions fall on the defendant alone and

---

[79]   Sentencing Order, at 3-4. Mr. Wilkinson requested that Mr. Caulk receive no more than the mandatory minimum for his charges. Sentencing Tr., July 16, 2018, at 25-26.

[80]   Def.'s Mot. for Postconviction Relief at 3.

[81]   *Taylor v. State*, 28 A.3d 399, 406 (Del. 2011) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

"are too important to be made by anyone else."[82]  Thus, the decision to waive his jury trial was Mr. Caulk's decision alone.

(40)  That said, a criminal defense attorney no doubt has a duty to advise his client regarding the waiver of any of these core rights, including the waiver of a jury trial.[83]  And Mr. Wilkinson did just that.  He "spent extensive time speaking with Mr. Caulk about his rights to a jury trial" and made one prison visit to Mr. Caulk for the sole propose of discussing his desire to waive his right to a jury trial.[84]  Mr. Wilkinson explained to Mr. Caulk "the advantages and disadvantages of a jury trial compared to a bench trial."[85]  Even so,  "Mr. Caulk was insistent on his desire to proceed by bench trial despite the advice of counsel."[86]

(41)  At bottom, when complaining of his lawyer's conduct regarding a waiver of the right to trial by jury, "the defendant bears the burden of proving that his counsel was unreasonable and whether counsel's deficiency prejudiced

---

[82]  *Cooke v. State*, 977 A.2d 803, 842 (Del. 2009).

[83]  *See Com. v. Mallory*, 941 A.2d 686, 698 (Pa. 2008) ("Of course, lawyers have an obligation to counsel their clients in conjunction with the waiver of basic rights, including the waiver of a jury.").

[84]  Trial Counsel Aff. ¶ 2.

[85]  *Id*.

[86]  *Id*.

defendant's waiver of a trial by jury."[87] Thus, Mr. Caulk would—to carry his burden on such a claim—have to demonstrate some deficiency in Mr. Wilkinson's discussion with him about a waiver of a jury trial and then demonstrate that deficiency somehow tainted Mr. Caulk's waiver to such a degree as to overcome the record of his waiver colloquy.[88]

(42) The Court conducted, with Mr. Wilkinson present, an extensive colloquy with Mr. Caulk when accepting his jury trial waiver.[89] It was only after this exchange that the Court found that Mr. Caulk knowingly and voluntarily waived his right to trial by jury and accepted his executed waiver form.[90] Any potential shortcomings on Mr. Wilkinson's part, were cured by the Court's extensive waiver colloquy.[91]

(43) Because Mr. Caulk fails to show that his counsel performed deficiently, the Court need not address his claim of alleged prejudice—*i.e.*, that he was tried by

---

[87] *State v. Taye*, 2014 WL 785033, at *3 (Del. Super. Ct. Feb. 26, 2014), *aff'd*, 2014 WL 4657310 (Del. Sept. 18, 2014).

[88] *State v. Couch*, 2007 WL 987403, at *2 (Del. Super. Ct. Mar. 30, 2007), *aff'd*, 2008 WL 390754, at *2 (Del. Feb. 14, 2008).

[89] Jury Trial Waiver Colloquy Tr., Dec. 27, 2017 (D.I. 80).

[90] *Id*. at 15.

[91] *State v. Hall*, 2016 WL 241192, at *3 (Del. Super. Ct. Jan. 19, 2016) ("If trial counsel is deficient in explaining to a defendant their right to a jury trial and the consequences of waiving that right, trial counsel's deficiency can be cured by the Court through a colloquy.").

a judge who would have known of his extensive criminal history.[92]  But this aspect of a criminal bench trial alone is wholly insufficient to demonstrate the actual prejudice required.  For a trial judge sitting alone to make legal determinations and "as a trier of fact, is presumed to have made his verdict only on the admissible evidence before him and to have disregarded that which is inadmissible."[93]  That judge also "is presumed to have the capability to attribute the proper weight to the evidence and to disregard evidence that is [immaterial or] unreliable."[94]

### 3. Failure to conduct a pre-trial investigation and to adequately prepare for trial.

(44)  In this claim, Mr. Caulk contends that he was denied counsel all together because Mr. Wilkinson did not visit him during the pre-trial process, did not investigate or interview any witnesses on his behalf, and did not go over the evidence with him.[95]  During trial, Mr. Caulk had a series of outbursts expressing his dissatisfaction with Mr. Wilkinson.  During one of these outbursts, Mr. Caulk stated:

---

[92]  *Hamby*, 2005 WL 914462, at *2.

[93]  *Burke v. State*, 1997 WL 139813, at *2 (Del. Mar. 2, 1997) (internal quotation marks and citation omitted).

[94]  *Truman v. Watts*, 598 A.2d 713, 720 (Del. Fam. Ct. 1991).

[95]  Def.'s Rule 61 Suppl. at 1-3.

First of all, I've been locked up eight months and I'm now just seeing this man. I ain't seen him. He did not confer with me about nothing, anything. I wrote to him several times asking for a suppression hearing. He didn't do that. And I feel as though him and the State are in cahoots."[96]

(45) The credible evidence in the postconviction record belies Mr. Caulk's protestations. Mr. Wilkinson met with Mr. Caulk on at least ten occasions, including numerous visits to the Howard R. Young Correctional Institution, where Mr. Caulk was detained pre-trial.[97] During their discussions, Mr. Wilkinson spent extensive time with Mr. Caulk going over the evidence against him, his plea offer, trial strategy, and his desire to proceed with a bench trial.[98] Mr. Wilkinson also had an investigator contact witnesses that Mr. Caulk advised him of and had those witnesses subpoenaed for trial.[99]

(46) In the face of all this, Mr. Caulk fails to explain just what Mr. Wilkinson may have missed.[100] Mr. Wilkinson was well-prepared for trial and he was in regular

---

[96] Trial Tr., Jan. 3, 2018, at 63.

[97] Trial Counsel Aff. ¶ 3.

[98] *Id.*

[99] *Id.*

[100] *See State v. Adkins*, 2019 WL 3202254, at *3 (Del. Super. Ct. July 16, 2019) (where postconviction movant provides no adequate explanation as to what may have been missed, his "conclusory allegations of ineffective assistance of counsel do not establish that his counsel's representation was objectively unreasonable.").

-23-

communication with Mr. Caulk as he prepared what defense he could.[101] There is simply no demonstrable deficiency here.

(47) Lastly, Mr. Caulk fails to address the other necessary *Strickland* showing—that, but for Mr. Wilkinson's conduct, the outcome of the trial would have been different (*i.e.*, that Mr. Caulk would have been acquitted of the charges he was convicted of).[102] For this reason too, Mr. Caulk's ineffectiveness claim alleging failure to investigate and communicate fails.

### 4. Failure to cross-examine witnesses using the questions provided by Mr. Caulk.

(48) In his next claim, Mr. Caulk alleges that Mr. Wilkinson conducted inadequate cross-examination of the State's witnesses.[103] Specifically, Mr. Caulk states that he "was submitting questions to [Mr. Wilkinson] to ask and [Mr. Wilkinson] wasn't asking any of the questions relevant to the case."[104] Mr. Caulk contends that his Sixth Amendment right to counsel "requires more than the mere presence of defense counsel to the day of trial to perform perfunctory

---

[101] Trial Counsel Aff. ¶ 3; Trial Tr., Jan. 3, 2018, at 64 (The Court: "No, I don't think Mr. Wilkinson thinks it's funny at all. He has been prepared.").

[102] *Wright*, 671 A.2d at 1356 ("Mere allegations of ineffectiveness will not suffice. A defendant must make specific allegations of actual prejudice and substantiate them.").

[103] Def.'s Rule 61 Suppl. at 1, 3.

[104] *Id.* at 1.

cross-examination of state witnesses as to their prior statements during the [r]obbery, which included their identification of Caulk prior to his arrest and in court identification at trial."[105] Mr. Caulk contends that he recognized Mr. Wilkinson's shortcomings at trial and wrote questions "based off his knowledge of the case and review of evidence and conflicts between evidence and statements" and requested Mr. Wilkinson use those questions, but Mr. Wilkinson did not.[106]

(49) In order to prevail on this claim, Mr. Caulk must prove, again, (i) deficient performance, and (ii) resulting prejudice.[107] And again, Mr. Caulk fails to do so.

(50) Mr. Caulk's perceived failings during cross-examination led to some of his outbursts during the trial. For instance, after Mr. Wilkinson completed his cross-examination of State's witness Officer Diana Agosto, Mr. Caulk complained loudly: "This is bullshit. Come on, man. I'm telling you stuff and you ain't saying nothing. This is bullshit. I feel as though I'm getting railroaded. I just brought this to your attention and you didn't say nothing."[108]

---

[105] *Id.* at 3.

[106] *Id.*

[107] *Strickland*, 466 U.S. at 688-94.

[108] Trial Tr., Jan. 3, 2018, at 48-49.

(51) A criminal defense attorney counsel is given wide latitude in making strategic trial decisions; this extends to the conduct of cross-examination.[109] The questions to be asked and how a given cross-examination is conducted are tactical decisions.[110] And when challenging those decisions, the movant has the burden of supplying precisely what information would have been obtained had counsel conducted the cross as the complaining inmate desired and just how this information would have changed the result of his trial.[111]

(52) Mr. Caulk doesn't identify what questions Mr. Wilkinson should have asked, which witnesses Mr. Wilkinson should have further cross-examined, what answers those questions would have produced, or how a different line of questioning would have produced a different result. And, again, Mr. Caulk's contentions are belied by the record. The trial transcript shows that Mr. Wilkinson cross-examined all of the State's witnesses,[112] and regularly consulted Mr. Caulk before concluding

---

[109] *State v. Powell*, 2016 WL 3023740, at *25 (Del. Super. Ct. May 24, 2016).

[110] *Outten v. State*, 720 A.2d 547, 557 (Del. 1998) ("Whether to call a witness, and how to cross-examine those who are called are tactical decisions."); *see also* Jean K. Gilles Phillips, and Joshua Allen, *Who Decides: The Allocation of Powers Between the Lawyer and the Client in a Criminal Case?*, 71 J. KAN. BAR ASS'N 28, 29 (2002) (citing *Wainwright v. Sykes*, 433 U.S. 72, 93 n.1 (1977)) ("[T]he United States Supreme Court [has] held that the attorney possesses the right to decide certain strategic and tactical decisions, including what witnesses to call, whether and how to conduct cross-examination, what trial motions should be made, and what evidence should be introduced.").

[111] *See Outten*, 720 A.2d at 557 (quoting *U.S. v. Rodriguez*, 53 F.3d 1439, 1449 (7th Cir. 1995)).

[112] Trial Tr., Jan. 3, 2018, at 28 (cross-examination of Singh), 38 (cross-examination of Johnstone), 47 (cross-examination of Agosto), 58 (cross-examination of Gifford), 75

-26-

his cross-examinations.[113]   The Court recognized and explained all of this to Mr. Caulk after one of his mid-trial outbursts:

> Mr. Wilkinson's job is to analyze the evidence in this case, ask the questions he believes to be appropriate and I see him on a regular basis coming back and consulting with you before he finishes.  You may believe that he needs to ask other questions . . . but Mr. Wilkinson is a professional, he's well-experienced. He's represented many criminal defendants.  And he needs to make the strategic choices . . . as to which questions to ask and which questions to forego.[114]

(53)   Mr. Wilkinson was not "merely present" at trial as Mr. Caulk describes it.  Rather, Mr. Wilkinson actively challenged the State's case via examination of the state's witnesses and objections to the State's evidence and questioning.[115]

(54)   Mr. Caulk has failed to show that Mr. Wilkinson's cross-examination methods fell below an objective standard of reasonableness.  And with this failure alone, the Court need go no further in its *Strickland* examination.[116]

---

(cross-examination of Hunt), 84 (cross-examination of Parrott), 95 (cross-examination of Lynch), 112 (cross-examination of Gearhart), 138 (cross-examination of Merced), 158 (cross-examination of Daly).

[113]  *Id.* at 32 (Mr. Wilkinson asking, "Your Honor, can I have a couple of moments?" consulting Mr. Caulk and then stating, "I have no further questions."), 40, 48, 59, 77, 98, 119, 137, 162, 165.

[114]  *Id.* at 64-65.

[115]  *Id.* at 18, 72, 129.

[116]  *Hamby*, 2005 WL 914462, at *2.

**5. Failing to file motion to suppress at Caulk's request.**

(55)   Mr. Caulk's last claim of ineffective assistance of trial counsel is that Mr. Wilkinson failed to file a motion to suppress as Mr. Caulk requested.[117] But, Mr. Caulk does not identify just what evidence Mr. Wilkinson should have sought to have suppressed. Nor does he address how any suppression motion would have changed the outcome of his case. So, again, Mr. Caulk fails to substantiate a claim for ineffective assistance of counsel.

(56)   During his direct appeal, Mr. Caulk raised an issue with his May 8th arrest. He claimed that his *Miranda* rights were violated when he was stopped, frisked, and arrested.[118] The Delaware Supreme Court rejected Mr. Caulk's *Miranda* claim finding that "[o]ther than Officer Lynch testifying that Caulk identified himself when asked, Caulk d[id] not identify any statements he made to the police that were admitted at trial."[119] So, there was nothing to suppress and the Court found no plain error.

(57)   Additionally, during the trial and on direct appeal, Mr. Caulk raised an issue with the blue, hooded sweatshirt that was found at his house, claiming that it did not match the clothing of the robber in the April 19th and May 4th surveillance

---

[117]  Def.'s Rule 61 Suppl. at 1.

[118]  *Caulk*, 2019 WL 1299962, at *2.

[119]  *Id.* at *3.

videos.[120] Mr. Wilkinson addressed the issue of the blue, hooded sweatshirt during his closing argument, asking the Court to study the garment in the video and compare it to the one admitted at trial: "[I]s that the same blue sweater that you see in the video?"[121] But as the Court noted in its query during argument, any quibble over the blue, hooded sweatshirt was a mere aside because the surveillance videos of the robberies showed the face of the person who committed them—Mr. Caulk.[122] The Delaware Supreme Court also found this issue of the blue, hooded sweatshirt to be unavailing, noting that the question of "whether the hooded sweatshirt recovered at the house was the same hooded sweatshirt as in the video went to the weight of the evidence and not its admissibility."[123]

(58) So, even if the Court assumes that Mr. Wilkinson was deficient in failing to file a suppression motion regarding any statement or the sweatshirt, this claim still fails under the *Strickland* prejudice analysis. Mr. Caulk was identified as the robber through the surveillance footage, Mr. Singh's identification, and his

---

[120] *Id*. at *4; Trial Tr., Jan. 3, 2018, at 139-40.

[121] Trial Tr., Jan. 5, 2018, at 40.

[122] *Id*. at 40-41.

[123] *Caulk*, 2019 WL 1299962, at *3.

cell-tower data.[124] Thus, it cannot be shown that there was a reasonably probability that but for Mr. Wilkinson's failure to suppress any other evidence, Mr. Caulk would have been acquitted.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS—APPELLATE COUNSEL.

(59) Any claim of ineffective assistance of counsel against appellate counsel is analyzed under the same *Strickland* framework.[125] To prove deficient performance, a claimant must show that his appellate counsel "was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them."[126] The requirement here is "to show that a reasonably competent attorney would have found one nonfrivolous issue warranting a merits brief."[127] This does not require appellate counsel to "raise every nonfrivolous claim, but rather select from among them in order to maximize the likelihood of success on appeal."[128]

---

[124] *Id.*; *see also* Trial Tr., Jan. 5, 2018, at 47 (The Court: "[b]ut even if we set aside Mr. Singh's [identification], if the Court looked at the video itself and said, I believe he has been properly identified just from the video evidence that's the same person, can't that be sufficient?").

[125] *Neal*, 80 A.3d at 946 (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

[126] *Id.* (quoting *Robbins*, 528 U.S. at 285).

[127] *Id*. (quoting *Robbins*, 528 U.S. at 288).

[128] *Id*. (quoting *Robbins*, 528 U.S. at 288).

(60)	If the Rule 61 movant can clear this first hurdle, he must then prove resulting prejudice.[129]	"That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal."[130]

(61)	Here, Mr. Ceccotti presented no arguments on appeal. Instead, he filed a motion to withdraw under Supreme Court Rule 26(c) and stated that he made a "conscientious examination of the record and the law and conclude[d] that the appeal [was] wholly without merit."[131]

(62)	Mr. Caulk now says Mr. Ceccotti was ineffective because: (i) by moving to withdraw and filing a Rule 26(c) non-merit brief, Mr. Ceccotti forced Mr. Caulk to proceed *pro se*, which placed him in an impossible position due to his mental health issues, learning disabilities, and lack of legal training;[132] and (ii) by failing to recognize, and raise on appeal, the trial court's errors of failing conduct a hearing to investigate the conflicts between himself and Mr. Wilkinson and failing to continue the trial to allow for more time for the defense to prepare his case.

---

[129] *Id.* at 947.

[130] *Robbins*, 528 U.S. at 285.

[131] PCR Counsel's Mot. to Withdraw, App. Vol. II, at A388 (Appellate Counsel's Mot. to Withdraw) (D.I. 70); *Caulk*, 2019 WL 1299962, at *2.

[132] Def.'s Mot. for Postconviction Relief at 3.

According to Mr. Caulk, Mr. Ceccotti denied him of his Sixth Amendment right to counsel on direct appeal.[133] These claims will be addressed together.

(63) When reviewing a motion to withdraw under Rule 26(c), the Supreme "Court must: (i) be satisfied that [appellate] counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation."[134] On direct appeal, the Delaware Supreme Court:

> . . . reviewed the record carefully and [ ] concluded that Caulk's appeal is wholly without merit and devoid of any arguably appealable issue. [And was] also [ ] satisfied that Counsel ha[d] made a conscientious effort to examine the record and the law and ha[d] properly determined that Caulk could not raise a meritorious claim in this appeal.[135]

(64) In order to bring a successful claim of ineffective assistance of counsel against an appellate attorney that did not raise any issue on appeal, Mr. Caulk must show that Mr. Ceccotti was objectively unreasonable in failing to find an arguable issue to raise.[136] To do so, Mr. Caulk need only show that a

---

[133] Def.'s Rule 61 Suppl. at 4.

[134] *Caulk*, 2019 WL 1299962, at *2.

[135] *Id*. at *4.

[136] *Neal*, 80 A.3d at 946.

reasonably competent attorney would have found at least one appealable issue.[137] He hasn't and for good reason. Neither Mr. Ceccotti, a full-time criminal appellate practitioner, nor the panel of justices on Mr. Caulk's direct appeal—after the examinations described above—could locate "a meritorious claim" or "any arguably appealable issue" to press.[138] And so, Mr. Caulk has failed to demonstrate that Mr. Ceccotti performed deficiently when prosecuting his direct appeal. And on that basis alone his claims of ineffectiveness against Mr. Ceccotti fail.[139]

## V. CONCLUSION

(65) Having reviewed the record carefully, the Court has concluded that Mr. Caulk's claims are without merit, and no other substantial grounds for relief exists. He has not met his heavy burden under *Strickland* of demonstrating that his attorneys' representation fell below an objective standard of reasonableness and that, but for their alleged errors, the outcome of his case would have been any different. Accordingly, Mr. Caulk's Motion for Postconviction Relief is **DENIED** and Mr. Eaton's Motion to Withdraw is **GRANTED**.

---

[137] *Id.* at 948.

[138] *Caulk*, 2019 WL 1299962, at *4.

[139] *Hamby*, 2005 WL 914462, at *2.

**SO ORDERED this 29th day of June, 2021.**

**Paul R. Wallace, Judge**

Original to Prothonotary

cc:    Timothy Maguire, Deputy Attorney General
       Matthew C. Bloom, Deputy Attorney General
       Edward Eaton, Esquire
       Ralph D. Wilkinson, Esquire
       Santino Ceccotti, Esquire
       Mr. Robert P. Caulk, *pro se*